## COMMONWEALTH vs. RALPH B. CARTER.

Plymouth.  September 10, 1980. — October 20, 1980.

Present: BROWN, DREBEN, & KASS, JJ.

*Practice, Criminal,* Sentence, Instructions to jury, Presumptions and burden of proof. *Imprisonment.*

A defendant sentenced to consecutive terms of imprisonment was entitled to have the number of days he was incarcerated awaiting trial credited against only one of the sentences, not both. [619-621]

There was no merit to a defendant's contention that a judge erred with respect to his instructions on reasonable doubt, that the charge shifted to the defendant the burden of disproving malice, or that the judge charged the jury that a person is presumed to intend the consequences of his act. [621-622]

INDICTMENTS found and returned in the Superior Court on June 30, 1976.

The cases were tried before *Prince, J.*

*Steven J. Rappaport,* for the defendant.

*Robert M. Payton,* Assistant District Attorney, for the Commonwealth.

KASS, J.  Unable to make bail, the defendant Carter was incarcerated while awaiting trial on four indictments, two for assault with intent to murder (G. L. c. 265, § 15) and two for assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A).[1]  Of these charges the defendant was convicted, and his appeal raises questions as to: (1) the number of days his prison term should have been reduced by reason of his detention in jail while awaiting trial and sentencing; and (2) certain claimed errors in the instructions to the jury.

---

[1] Each of the crimes alleged was committed on two victims, hence the four indictments.

1. *Jail credits.* The defendant received sentences of consecutive prison terms of not less than seven nor more than ten years for the two assaults with intent to murder and sentences of the same duration for the assaults and batteries with a dangerous weapon, the latter sentences to be served concurrently with the others.

When he was sentenced the defendant had already spent 398 days in jail awaiting trial and during trial. For this the trial judge gave the defendant credit against one of the sentences he was to serve consecutively. General Laws c. 279, § 33A, as appearing in St. 1961, c. 75,[2] requires a sentencing judge to give a defendant credit for time served in jail before sentencing while awaiting trial and during trial. It is the defendant's contention that the statute entitles him to 398 days' credit on each of the consecutive sentences, i.e., an aggregate of 796 days' credit.

In order to reach this result the defendant makes a grammatical argument: The statute speaks of the prisoner as one deemed to have served so much of his sentence (singular), as opposed to sentences (plural), as he spent in confinement before receiving the sentence; thus, the argument proceeds, if a person receives multiple sentences, the credit must be applied to each of them. Because the statute affects liberty, the defendant contends, it is penal in nature (see *Allen* v. *Massachusetts Parole Bd.*, 352 Mass. 471, 474 [1967]) and entitles the prisoner to the benefit of the familiar rule of construction that an ambiguity resulting from a literal reading of a criminal statute shall be resolved in favor of the defendant. *Commonwealth* v. *Crosscup*, 369 Mass. 228, 234 (1975). Cf. *Commonwealth* v. *Clinton*, 374 Mass. 719, 721 (1978).

This essentially technical argument could fairly be answered by a countervailing technical one, that G. L. c. 4,

---

[2] The full text of § 33A, is as follows: "The court on imposing a sentence of commitment to a correctional institution of the commonwealth, a house of correction, or a jail, shall order that the prisoner be deemed to have served a portion of said sentence, such portion to be the number of days spent by the prisoner in confinement prior to such sentence awaiting and during trial."

§ 6, lays down a rule of construction that "[w]ords import-ing the singular number may extend and be applied to sev-eral persons or things . . . ." See *Graci* v. *Damon*, 6 Mass. App. Ct. 160, 171 (1978), *S.C.*, 376 Mass. 931 (1978).

Much more to the point, however, is that the Legislature in enacting G. L. c. 279, § 33A, had in mind that it would be a "fair and worthwhile practice" to grant a prisoner credit for time in confinement before imposition of sen-tence. Report and Recommendations of the Governor's Committee to Study the Massachusetts Correctional Sys-tem, 1955 Senate Doc. No. 750, at 75. In keeping with that intent, the approach in the cases has been to consider the subject of jail credits "against the backdrop of fair treatment of the prisoner." *Commonwealth* v. *Grant*, 366 Mass. 272, 275 (1974). See also *Lewis* v. *Commonwealth*, 329 Mass. 445, 448 (1952); *Brown* v. *Commissioner of Correction*, 336 Mass. 718, 721 (1958); *Manning* v. *Superintendent, Massa-chusetts Correctional Inst., Norfolk*, 372 Mass. 387, 396 (1977); *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424, 427-428 (1978). While discussing in the *Manning* case, *supra* at 392, a similar jail credit statute,[3] the court observed that the statutory purpose of the provisions was to afford re-lief to persons who because of inability to obtain bail were held in custody. See *Kinney, petitioner*, 5 Mass. App. Ct. 457, 460 (1977). This consideration buttresses what we consider to be the fair and untortured reading of the statute: that a prisoner is to receive credit for all jail time — neither more nor less — served before sentencing which relates to the criminal episode for which the prisoner is sentenced,[4]

---

[3] G. L. c. 127, § 129B, as appearing in St. 1961, c. 74.

[4] A prisoner does not generally receive credit for jail time served for an unrelated offense. *Needel, petitioner*, 344 Mass. 260, 262 (1962). But see *Manning* v. *Superintendent, Massachusetts Correctional Inst., Norfolk*, 372 Mass. at 395, concerning credit for jail time served on a sentence later vacated. He does receive credit for confinement under a separate charge (e.g., Federal) in which the State has a significant interest and which arises out of the same occurrence. *Commonwealth* v. *Grant*, 366 Mass. 272, 276 (1974).

but does not receive credit greater than the number of days of his presentencing confinement. Had the defendant been able to make bail, he would have been obliged to serve the full consecutive sentences. Were the defendant to get double credit for presentencing confinement, he would serve 398 fewer days in prison than if he had made bail. A statute designed to neutralize the consequence of inability to make bail should not be construed to lead to such a bizarre result.

From what we have said it follows that were a sentence to expire with jail time credit unexhausted, that remaining time is to be applied to the balance of concurrent and consecutive sentences left to be served. Any sentence being served concurrently with a sentence to which a jail credit is applied should receive the benefit of the same credit so that the sentence in fact retains a concurrent status.

2. *Claimed errors in jury instructions.* Although trial counsel took three exceptions to the judge's charge to the jury, none of those is argued on appeal. Rather the defendant raises claims of defect in the instructions not called to the attention of the judge at the time of trial. A claim of error not called to the attention of the trial court brings nothing to this court for review, *Commonwealth* v. *Stokes*, 374 Mass. 583, 589 (1978), unless the claimed error is of such dimension that allowing it to stand uncorrected would create "a substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).[5] None of the asserted defects in the instructions which the defendant now argues presents such a risk. Upon a review of the entire instructions we find it can hardly be said, as the defense argues, that the judge trivialized the concept of reasonable doubt when he said, "A fact is proved beyond a reasonable doubt when it is proved to that degree of certainty that satisfies your judgment and your consciences as reasonable men and women. It leaves in your mind a clear and settled conviction of guilt." See *Commonwealth* v. *An-*

---

[5] As to counsel's heavy duty to call errors to the attention of the trial court, see *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 842 n.2 (1980).

*drews, post* 866 (1980). Compare *Commonwealth* v. *Ferreira,* 373 Mass. 116, 128-129 (1977); *Commonwealth* v. *Pomerleau, ante* 208, 213-214 (1980).

There is no merit whatever to the defendant's complaint that the judge shifted to him the burden of disproving malice. He charged repeatedly and properly that the Commonwealth had to prove each element of the crime and that "nothing is to be presumed against the defendant." See *Commonwealth* v. *McInerney,* 373 Mass. 136, 150-151 (1977); *Commonwealth* v. *Watkins,* 377 Mass. 385, 388, cert. denied, 442 U.S. 932 (1979).

Finally, when the charge is read as a whole, it is apparent that the judge did not charge the jury that a person is presumed to intend the consequences of his act, an instruction held defective in *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 253-254 (1980), but rather, while expanding on the subject, he said, "As a general rule, it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of any acts knowingly done . . . . "[6] The use of the word "infer" avoids the presumption said to be unlawful in *Sandstrom* v. *Montana,* 442 U.S. 510, 515 (1979), and *DeJoinville.* See *Lannon* v. *Commonwealth,* 379 Mass. 786, 793 (1980).

*Judgments affirmed.*

---

[6] This assertion of error we examine apart from the *Freeman* "risk of miscarriage of injustice" standard because it raises a claim whose constitutional significance was not established until after the defendant's trial. *LeBlanc* v. *Commonwealth,* 363 Mass. 171, 173-174 (1973).