322 S.E.2d 850

**Tammy Denise FLACK**

v.

**Gwynne SIZER and W. Joseph McCoy, Commissioner, Department of Corrections.**

No. 16264.

Supreme Court of Appeals of West Virginia.

Nov. 14, 1984.

George Castelle, Charleston, for petitioner.

David A. Faber and Marye L. Wright, Asst. U.S. Attys., Charleston, for respondent Sizer.

Silas B. Taylor, Asst. Atty. Gen., Charleston, for respondent McCoy.

HARSHBARGER, Justice:

In this original proceeding in habeas corpus, the relator, Tammy Denise Flack, challenges the validity of the sentence imposed upon her by the Circuit Court of Raleigh County that resulted in her imprisonment at the Federal Correctional Institution at Alderson for an indeterminate term of one to ten years. She posits that her sentence violates her equal protection rights under the federal and state constitutions.[1]

On December 21, 1983, Flack, then twenty years old, was sentenced to prison for not less than one nor more than ten years upon her guilty plea to uttering a forged check, a felony. W.Va.Code, 61–4–5. The circuit court delayed imposition of sentence until after the Christmas holidays, however, and her lawyer requested reconsideration of the sentence, both orally at the sentencing hearing and by written motion filed on December 23, 1983. The written motion requested that in lieu of imprisonment, Ms. Flack be sentenced to probation or be assigned to a center for youthful offenders pursuant to W.Va.Code, 25–4–1, *et seq.* (1980 Replacement Vol. and 1984 Cum.Supp.). By order entered December 27, 1983, the court took the motion for reconsideration of sentence under advisement and ordered Flack to jail pending transfer to a penal facility.

The court apparently did not act on the motion for reconsideration, and on January 4, 1984, she was transferred to Alderson to begin serving her sentence.[2] On February 8, she made a pro se motion for reduction of sentence, summarily denied because "no substantial change has been made in the circumstances of the [relator]."

Ms. Flack's petition for a writ of habeas corpus was filed here on March 19, and on the 28th, a writ, directed to respondent Gwynne Sizer, Warden of the Alderson facility, was issued. By order entered May 8, we permitted W. Joseph McCoy, Commissioner of the Department of Corrections, to

---

**1.** "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State where they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amend. XIV, § 1.

"The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." W.Va. Const. art. III, § 17.

**2.** Since the closure of the West Virginia prison for women in 1983, female state prisoners have been committed to the custody and care of the Federal Correctional Institution, Alderson pursuant to an agreement between the State of West Virginia and the Government of the United States. *See* W.Va.Code, 28–5C–1, *et seq.* (1984 Cum.Supp.).

be joined as an additional respondent.[3]

Is W.Va.Code, 25-4-1, *et seq.*, commonly called the Youthful Male Offender Act, constitutional? The relevant part of the Act provides that a trial judge may suspend imposition of the sentence of any male between the ages of sixteen and twenty-one who has been convicted of a crime not punishable by life imprisonment and may instead assign him to a youthful offender center for treatment for a period of from six months to two years. W.Va.Code, 25-4-6.[4] It provides a sentencing alternative to close confinement for young men who, by virtue of their youth and background and of the nature of their crimes, are likely to benefit from the rehabilitative atmosphere of a detention center. *State v. Hersman,* 161 W.Va. 371, 242 S.E.2d 559 (1978).

W.Va.Code, 25-4-1, *et seq.*, is, by its very terms, applicable only to male offenders who satisfy the eligibility requirements. The State admits that the relator would have been eligible to be considered a youthful offender for purposes of sentencing but for the fact that she is female.[5]

3. In the relator's petition, respondent Sizer was the only named party respondent. In her response to this Court's order of March 28, 1984, Warden Sizer stated that she had no interest in or obligation attendant to the questions raised in the petition and that the real party in interest was the State agency responsible for implementation of the statutory provisions cited in the petition. Warden Sizer further asserted that she would deliver the relator to proper State officials upon demand and presentation of official written authority. On April 24, 1984, the State, by her attorney, filed a motion to substitute Commissioner McCoy as respondent, and to dismiss Warden Sizer as a party. By order entered May 8, 1984, this Court denied the motion for substitution, but permitted the addition of Commissioner McCoy as a party respondent.

4. W.Va.Code, 25-4-6 provides, in full:

"The judge of any court with original criminal jurisdiction may suspend the imposition of sentence of any male youth convicted of or pleading guilty to a criminal offense, other than an offense punishable by life imprisonment, who has attained his sixteenth birthday but has not reached his twenty-first birthday at the time of the commission of the crime, and commit him to the custody of the West Virginia commissioner of public institutions to be assigned to a center. The period of confinement in the center shall be for a period of six months, or longer if it is deemed advisable by the center superintendent, but in any event such period of confinement shall not exceed two years. If, in the opinion of the superintendent, such male offender proves to be an unfit person to remain in such a center, he shall be returned to the court which committed him to be dealt with further according to law. In such event, the court may place him on probation or sentence him for the crime for which he has been convicted. In his discretion, the judge may allow the defendant credit on his sentence for time he has spent in the center.

"When, in the opinion of the superintendent, any boy has satisfactorily completed the center training program, such male offender shall be returned to the jurisdiction of the court which originally committed him. He shall be eligible for probation for the offense with which he is charged, and the judge of the court shall immediately place him on probation. In the event his probation is subsequently revoked by the judge, he shall be given the sentence he would have originally received had he not been committed to the center and subsequently placed on probation. The court shall, however, give the defendant credit on his sentence for the time he spent in the center.

"Any male youth between the ages of ten and eighteen committed by the judge of any court of competent jurisdiction for any of the causes, and in the manner prescribed in article five [§ 49-5-1 et seq.], chapter forty-nine of this Code, may, if such youth is or has attained the age of sixteen, be placed in a center or transferred from the industrial school or like facility to a center and back to such facility by the commissioner of public institutions, if he deems it proper for the youth's detention and rehabilitation."

5. No provision comparable to W.Va.Code, 25-4-1, *et seq.*, exists for females. Although W.Va. Code, 28-3-2 (1984 Cum.Supp.) does provide for the commitment of certain female offenders to the custody of the Commissioner of Corrections, it is apparent that the statute is merely in aid of the provisions of the Juvenile Proceedings Act, W.Va.Code, 49-5-1, *et seq.* (1980 Replacement Vol. and 1984 Cum.Supp.), and is applicable only where the proceedings were commenced by delinquency petition. Moreover, W.Va.Code, 28-3-2 applies only to females between the ages of twelve and eighteen and clearly contemplates commitment to the Commissioner's custody for the purpose of placement in the Industrial Home for Youth. As a consequence, even though there may be some overlap, it can hardly be argued that W.Va.Code, 28-3-2 affords female offenders treatment comparable to that accorded male offenders under W.Va.Code, 25-4-1, *et seq.* Indeed, W.Va.Code, 28-3-2 differs substantially from its purported counterpart for males, W.Va.Code, 28-1-2 (1984 Cum.Supp.), which provides for commitment to the custody

■ Statutory classifications which distinguish between males and females are subject to scrutiny under both the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and the guarantee of equal protection embodied in Article III, Section 17 of the West Virginia Constitution. "To withstand scrutiny under the Equal Protection Clause, 'classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.' (Footnote omitted.)" *Peters v. Narick*, 165 W.Va. 622, 270 S.E.2d 760, 762 (1980), *quoting Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, 407 (1976), *reh. denied*, 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977), which sets the federal rule.

■ The standard of scrutiny under our state constitution is much stricter.

Gender-based classifications challenged as denying the right to equal protection guaranteed by Article III, Section 17 of the West Virginia Constitution are to be regarded as suspect, accorded the strictest possible judicial scrutiny, and are to be sustained only if the State can demonstrate a compelling interest to justify the classification.

Syllabus Point 2, *Peters v. Narick, supra*.

■ The State admits it can forward neither an important governmental objective nor a compelling State interest that is furthered by denial of youthful offender status to females for sentencing purposes.[6] Nor can we perceive any legitimate justification for such discrimination. Indeed, the State's interest in rehabilitation of criminal offenders would appear to be perfectly compatible with allowing qualified females the opportunity to be sentenced as youthful offenders.[7] We must conclude that W.Va. Code, 25–4–1, *et seq.*, denies equal protection of law to females under both the federal and state constitutions.

■ This conclusion does not require invalidation of the provisions of the Youthful Male Offender Act. As we noted in *Peters v. Narick, supra*, 165 W.Va. at 635, 270 S.E.2d at 767:

Where a statute is defective because of under-inclusion there exist two remedial alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by its exclusion. *Welsh v. United States*, 398 U.S. 333, 361, 90 S.Ct. 1792, 1807–08, 26 L.Ed.2d 308, 331 (1970).

■ "Choosing between invalidation or neutral extension requires an ascertainment of the predominate legislative purpose underlying the statute's enactment." *Peters v. Narick, supra* at 767, *citing Beal v. Beal*, 388 A.2d 72 (Me.1978). The primary purpose of the act is rehabilitative, offering a second chance to offenders who, because of their youth and background, are likely candidates for reformation. W.Va. Code, 25–4–1; *State v. Hersman, supra*. *See also State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268 (1983). This laudatory legislative purpose would be thwarted by invalidation of the statute. Accordingly, we conclude that W.Va.Code, 25–4–1, *et seq.*, is to be applied in a gender-neutral fashion that will afford both males and females the opportunity to be sentenced as youthful offenders under its terms. Youthful offender status will henceforth be granted solely on the basis of the offender's eligibility under the statute and decisions of this Court.

of the Commissioner of males between the ages of *ten* and eighteen in aid of the Juvenile Proceedings Act.

**6.** The State, in its response, candidly stated: "This office has conferred with the court below and the prosecuting attorney of Raleigh County, neither of whom take issue with the position that the statute, as written, is discriminatory. After conferring with the Department of Corrections, counsel is unable to discern any compelling or rational basis for providing youthful offender sentencing only to males that is clearly related to the rehabilitation goals of the statute."

**7.** W.Va.Code, 62–13–1 and 62–13–4 provide that rehabilitation is the primary goal of the West Virginia corrections system. *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981).

The State contends that even if W.Va. Code, 25–4–1, *et seq.*, violates equal protection as written, Ms. Flack made no timely request to be sentenced as a youthful offender and the lower court never had an opportunity to rule on the issue.

The record shows that her request to be sentenced as a youthful offender was contained in her motion for reconsideration of sentence filed December 23, 1983, taken under advisement by the circuit court by its order entered December 27. The fact that the court took cognizance of her motion undermines the State's argument.

However, there is no record of any hearing or ruling by the court on the motion for reconsideration of sentence, and, therefore, we are unable to determine whether the relator was in fact unconstitutionally denied youthful offender status solely because of gender. Accordingly, we remand the case to the Circuit Court of Raleigh County with directions to forthwith conduct a hearing and rule on the relator's motion for reconsideration of sentence, all in accordance with W.Va.Code, 53–4–7 (1981 Replacement Vol.).

Remanded with instructions.