585 S.E.2d 1

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Ryan Farnsworth SCOTT, Defendant Below, Appellant.**

No. 30692.

Supreme Court of Appeals of West Virginia.

Submitted April 15, 2003.

Decided May 7, 2003.

Davis, J., filed a dissenting opinion in which Maynard, J., joined.

Darrell V. McGraw, Jr., Attorney General, Steven R. Compton, Assistant Attorney General, Charleston, for Appellee.

Joseph T. Santer, Esq., Santer and Santer, Parkersburg, for Appellant.

STARCHER, Chief Justice.

In this appeal from the Circuit Court of Wood County, a young criminal defendant contends that he was improperly sentenced on two criminal convictions. The young defendant contends that the circuit court did not properly give him credit for the days he spent in pre-sentencing custody. The young defendant argues that the circuit court's sentencing order improperly deprived the defendant of an early appearance before the Parole Board.

As set forth below, we agree and reverse the circuit court's sentencing order.[1]

I.

*Facts & Background*

On February 28, 1998, 18–year–old appellant Ryan F. Scott cashed a check for $100.00 at a convenience store in Wood County, West Virginia. The check was one of several blank, personal checks stolen from Deborah K. Hansen. The clerk cashing the check recognized the appellant, and later gave a statement to the police.

A police officer presented evidence to a magistrate that the appellant had forged Ms. Hansen's signature on the stolen check, and the magistrate issued a warrant for the appellant's arrest on the felony charge of uttering.[2] The police arrested the appellant on April 24, 1998, and a magistrate required the appellant to post a $5,000.00 bond before being released from custody. The appellant spent 14 days in jail before he was able to raise the funds to post the bond, and appears to have been released on May 8, 1998.

While the record is unclear as to the exact date, at some point in May 1998 the appellant engaged in a conspiracy with two other individuals to deliver marijuana to a prisoner in the local jail. Unbeknownst to the appellant, the local police drug task force discovered the marijuana delivery. In August 1998, the grand jury met, heard evidence from the police and issued an indictment charging the appellant with four felonies: illegally transporting a controlled substance onto the grounds of a jail;[3] conspiracy to transport a controlled substance onto the grounds of a jail;[4] delivering a controlled substance to a jail inmate;[5] and conspiracy to deliver a controlled substance to a jail inmate.

1. This case was argued in the Nicholas County Courthouse in Summersville, West Virginia, as part of the Court's LAWS—Legal Advancement for West Virginia Students—program. *See* "The LAWS Project," *http://www.state.wv.us/wvsca/Michelle/lawscover.htm.* One school student who witnessed the argument of this case later aptly summarized the facts in a way that tedious, technically-correct legal writing rarely allows: "This guy was pretty ornery, wasn't he?"

2. "Uttering" is a crime under *W.Va.Code*, 61–4–5(a) [1998], which makes it illegal for "any person [to] forge any writing . . . to the prejudice of another's right, or utter or attempt to employ as true such forged writing, knowing it to be forged[.]" The appellant was not charged with stealing Ms. Hansen's checks, or forging her name to the $100.00 check; although likely, the evidence apparently did not clearly establish that the appellant had committed these crimes. Instead, the statement of the convenience store clerk clearly established that the appellant "uttered" the check in exchange for $100.00 cash, that is, offered a forged document to another person to the detriment of that other person's rights.

3. *W.Va.Code*, 61–5–8(c) [1990] stated that it was illegal to "transport[ ] any alcoholic liquor, non-

intoxicating beer, poison, explosive, firearm or other dangerous or deadly weapon or any controlled substance . . . onto the grounds of any jail or prison, or private prison or juvenile facility or detention center within this state[.]"

The appellant was convicted under the statute enacted in 1990. The statute was amended by the Legislature in 2001, but no changes were made that affect the appellant's case.

4. *W.Va.Code*, 61–10–31 [1971] states that "[i]t shall be unlawful for two or more persons to conspire . . . to commit any offense against the State . . . if . . . one or more of such persons does any act to effect the object of the conspiracy." In other words, if two or more people agree to commit a crime, and one of those people takes any step toward committing the agreed-upon crime, then each person can also be convicted of "conspiracy," a separate crime with a separate punishment. *See State v. Less,* 170 W.Va. 259, 294 S.E.2d 62 (1981).

5. *W.Va.Code*, 61–5–8(d) [1990] stated that it was illegal to "deliver[ ] any alcoholic liquor, nonintoxicating beer, poison, explosive, firearm or other dangerous or deadly weapon, or any controlled substance . . . to an inmate or prisoner in

The appellant was once again arrested, and spent another two days in the local jail before posting a $10,000.00 bond. The appellant appeared before the circuit judge on the indictment and pled not guilty· to the four marijuana-related charges. The circuit judge then scheduled the appellant's trial for January 5, 1999.

Instead of having a trial, after meetings with his attorney and the prosecutor, the appellant agreed to plead guilty to some of the charges pending against him. The appellant agreed to plead guilty to uttering,[6] and agreed to plead guilty to transporting a controlled substance onto the grounds of a jail. In response, the prosecuting attorney agreed to dismiss the remaining three charges involving the marijuana.

The circuit judge accepted the appellant's guilty pleas in open court, and in March 1999 the appellant was taken into custody, first by the local jail, and later by the Division of Corrections ("DOC") for diagnostic testing to determine the proper sentence for the appellant's crimes. After receiving a diagnostic report from the DOC, in September 1999 the circuit judge held a hearing and decided to defer sentencing the appellant to prison.

Under the law, the circuit judge could have sentenced the appellant to a prison term of one to ten years for uttering,[7] and one to five years for transporting the controlled substance into the jail.[8] Alternatively, because the appellant was under the age of 23, the circuit judge had the option of sending the appellant to a rehabilitation program at the "young adult offender center" managed by the DOC.[9] The circuit judge chose the latter option.

The appellant was placed into the young adult offender rehabilitation program at the Anthony Correctional Center near White Sulphur Springs. The appellant performed well in this program, graduating at the top of his class and receiving the honor of valedictorian. He was released from custody and returned home to Wood County on April 26, 2000. The circuit judge then entered an order placing the appellant on probation for a

---

any jail, prison or private prison or to any resident of any juvenile facility or juvenile detention center within this state[.]" As stated previously in footnote 3, this statute was amended in 2001, but no changes were made that affect the appellant's case.

6. Before a circuit court can exercise jurisdiction over a criminal case, a formal charge must be made. Felony charges in a circuit court are initiated in two ways: by "indictment," or by "information." A grand jury composed of members of the community issues an indictment, while an information is issued by a prosecutor, but only (under West Virginia law) with the consent of the defendant. In this case, the grand jury only indicted the appellant for four drug offenses. In his plea agreement, the appellant consented to allow the prosecutor to file an information formally charging him with uttering.

7. W.Va.Code, 61–4–5(a) [1998] states that if a person is found guilty of uttering, the person "shall be confined in the penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in jail not more than one year and be fined not exceeding five hundred dollars."

8. W.Va.Code, 61–5–8(c) [1990] stated that if a person was found guilty of transporting a controlled substance into a jail, the person "shall be fined not less than one thousand nor more than five thousand dollars or imprisoned in the penitentiary not less than one year nor more than five years, or, in the discretion of the court,· be confined in the county jail not more than one year and shall be fined not more than five hundred dollars." This statute was amended in 2001, but no changes were made affecting the appellant's case.

9. The Legislature has mandated the creation of facilities for the housing of young adult offenders "who are amenable to discipline other than in close confinement, and to give better opportunity to young adult offenders for reformation and encouragement of self-discipline." W.Va.Code, 25–4–1 [1999]. A young adult offender is a person convicted of or pleading guilty to a felony (other than one punishable by life imprisonment, like murder), who is at least 18 but has not reached the age of 23 at the time of sentencing by the circuit judge. A young adult offender can participate in the program only once. W.Va. Code, 25–4–6 [2001].

Prior to 1984, the statute was known as the "Youthful Male Offender Act," and allowed judges to provide sentencing alternatives only for young men—not young women. In Flack v. Sizer, 174 W.Va. 79, 322 S.E.2d 850 (1984), this Court found that the Act violated the equal protection clauses of both the United States Constitution and the West Virginia Constitution. Since 1984, the Act has been applied in a gender-neutral fashion to give both males and females the opportunity to be sentenced as youthful offenders.

term of two years, and certain conditions were imposed.

By the end of summer 2000, the record indicates that the appellant was struggling with the conditions of his probation. For example, drug tests performed by the probation officer showed the appellant was using marijuana; when questioned, the appellant lied and denied using marijuana. The appellant also changed his residence without the permission of his probation officer, and started missing appointments with his probation officer. Finally, in August 2000, the appellant allegedly stole a video cassette recorder and a gasoline powered weed trimmer from his mother.

Because of these repeated violations by the appellant of the conditions of his probation, the appellant's probation officer filed a motion with the circuit judge to revoke the appellant's probation. The appellant was arrested and placed in jail, and subsequently admitted to the circuit judge that he had violated the terms and conditions of his probation. By this time, the appellant had spent a total of 567 days in incarceration.

On February 14, 2001, the circuit judge refused a request by the appellant that he again be released on probation. Instead, the circuit judge entered an order imposing a sentence of one to ten years in the West Virginia Penitentiary for the offense of uttering, and one to five years for the offense of transporting a controlled substance onto the grounds of a jail. The circuit judge also ordered that the two sentences were to run consecutively, back-to-back (as opposed to concurrently, or at the same time)—a total sentence of two-to-fifteen years.

In the sentencing order, the circuit judge gave the appellant credit for the 567 days previously spent in the local jail or the DOC's custody. However, the circuit judge split the credit for those days unevenly between the two sentences. The appellant was given 565 days credit towards the uttering charge, and only two days credit towards the transporting charge.

The appellant now appeals the circuit judge's sentencing order.

## II.

### Standard of Review

At the outset, we establish a "standard of review" to guide our deliberations regarding the parties' arguments. The parties' arguments ask us to interpret a section of the Youthful Offender Act, *W.Va.Code*, 25-4-6 [2001], so we begin by setting forth our rules for statutory interpretation.

At issue is a "penal" statute, a law that imposes "a penalty, fine or punishment for certain offenses of a public nature or wrongs committed against the state." *Black's Law Dictionary* 1020 (5th Ed.1979). This Court has repeatedly stated that penal statutes are construed against the State and in favor of a defendant. For example, in Syllabus Point 3 of *State ex rel. Carson v. Wood*, 154 W.Va. 397, 175 S.E.2d 482 (1970), we stated that "[p]enal statutes must be strictly construed against the State and in favor of the defendant." *See also*, Syllabus Point 1, *Myers v. Murensky*, 162 W.Va. 5, 245 S.E.2d 920 (1978) ("Ambiguous penal statutes must be strictly construed against the State and in favor of the defendant."); Syllabus Point 2, *State v. Riley*, 158 W.Va. 823, 215 S.E.2d 460 (1975) ("Penal statutes are strictly construed against the state and favorably for the defendant."). "It is a general rule that a penal statute will not be extended by construction, but must be limited to cases clearly within its language and spirit." Syllabus Point 1, *State v. Larkin*, 107 W.Va. 580, 149 S.E. 667 (1929).

With these standards in mind, we consider the parties' arguments.

## III.

### Discussion

The parties dispute whether and how, under *W.Va.Code*, 25-4-6 [2001], a circuit judge must apply credit for a young defendant's prior time served, when the circuit judge is sentencing the defendant to consecutive terms in prison after the defendant successfully completed a program of rehabilitation at a young adult offender center, was placed on probation, and such probation is being revoked. The appellant argues the credit must

be applied by the circuit judge to reduce the defendant's minimum sentence that must be served before the defendant is eligible for parole; the State argues the credit must be applied by the Parole Board to reduce the defendant's maximum sentence, the total period spent in prison.

We begin by fully setting out the parties' arguments (arguments that are, frankly, comparable to a convoluted mathematics word problem). The appellant contends that the circuit judge erred by crediting virtually all of the appellant's time spent in incarceration against the appellant's uttering charge. The appellant argues that this division of time violates the Youthful Offender Act, *W.Va.Code*, 25-4-1 to -12, which was written by the Legislature so that young adult offenders would not be penalized for participating in a young adult rehabilitation program. The Act, specifically *W.Va.Code*, 25-4-6, states that participants in a young adult offender program are eligible for probation upon completing the program. However, *W.Va.Code*, 25-4-6 also states:

> In the event the offender's probation is subsequently revoked, the judge shall impose the sentence the young adult offender would have originally received had the offender not been committed to the center and subsequently placed on probation. The court shall, however, give the offender credit on his or her sentence for the time spent in the center.

The appellant contends that under this statute, had he not been committed to the Anthony Correctional Center, he would have originally received a sentence of two-to-fifteen years in the penitentiary. The appellant states he would have been eligible to appear before the Parole Board after spending two years—or 730 days—in custody, to state his case.

The appellant, however, argues that the court's order actually mandated that the appellant spend *more* than two years in custody before being eligible to appear before the Parole Board. The circuit court's order essentially required that he first spend 565 days in custody for uttering, and then spend another 365 days (2 days credit plus an additional 363 days) in custody for transporting—

a total of 930 days—before being eligible to appear before the Parole Board. The appellant therefore contends that by requiring the appellant to spend 200 additional days in custody before being eligible to see the Parole Board, the circuit court actually imposed a sentence greater than the sentence the appellant would have received if he had avoided the young adult offender program and gone directly to prison.

The State responds, however, that the appellant's sentence is lawful because it is identical to what the appellant would have received had he not participated in the young adult offender program. The Act only requires a judge to "impose the sentence the young adult offender would have originally received had the offender not been committed to the center[.]" *W.Va.Code*, 25-4-6. Because the appellant received a two-to-fifteen year sentence after violating his probation—the same sentence he would have originally received had he not been sent to the Anthony Correctional Center—the State argues the statutory requirements have been met.

The State suggests that the appellant's argument over where the credit for time served should be applied has already been answered by this Court—and suggests the credit should be applied to the end of the sentence, not the beginning. The State argues that in the case of consecutive sentences, "[t]he maximum terms of the consecutive sentences ... must first be added together to determine the inmate's maximum discharge date. It is from this maximum discharge date that all presentence and good time deductions must be made in order to establish the inmate's minimum discharge date." *Echard v. Holland*, 177 W.Va. 138, 143, 351 S.E.2d 51, 56-57 (1986). In other words, the State argues that the circuit judge properly gave the appellant credit for his 567 days spent in custody, but all of those days credited apply toward the aggregate of all terms imposed. The time credited reduces the appellant's maximum discharge date (fifteen years), not the appellant's minimum discharge date (two years). As a bureaucratic mechanism, for ease in calculation, the State suggests that the cir-

cuit judge correctly gave credit for time served against the sentence that was first imposed. *See, e.g., State v. Blondin,* 164 Vt. 55, 665 A.2d 587, 591 (1995) ("The total time in custody should be credited on a day-for-day basis against the total days imposed in the consecutive sentences. For ease in calculation and clarity in respect to subsequent exercise of court discretion, the credits should be applied to the sentence that is first imposed.")

■ At oral argument, the parties disputed whether it is the circuit judge at the time of sentencing, or the Parole Board while a defendant is serving his or her sentences, that is empowered to apply a defendant's credit for time spent in incarceration toward the length of the defendant's sentence. We can quickly dispense with this dispute by noting that our research reveals that the Legislature places the duty to apportion credit for time served on the sentencing judge, in the sentencing order. *W.Va.Code,* 61–11–24 [1923] states:

Whenever any person is convicted of an offense in a court of this State having jurisdiction thereof, and sentenced to confinement in jail or the penitentiary of this State ... such person may, in the discretion of the court ... be given credit on any sentence imposed by such court ... for the term of confinement spent in jail awaiting such trial and conviction.

While *W.Va.Code,* 61–11–24 suggests that a grant of credit for time served is within the discretion of the sentencing court, we have made it clear that constitutional protections mandate that a person receive credit for any time served in a jail or prison. We recently stated, in Syllabus Point 6 of *State v. McClain,* 211 W.Va. 61, 561 S.E.2d 783 (2002), that:

The Double Jeopardy and Equal Protection Clauses of the West Virginia Constitution require that time spent in jail before conviction shall be credited against all terms of incarceration to a correctional facility imposed in a criminal case as a punishment upon conviction when the underlying offense is bailable.

The rule espoused in *McClain* was an expansion on our holding in *Martin v. Leverette,* 161 W.Va. 547, 244 S.E.2d 39 (1978), clarifying that time spent in jail must constitutionally be credited against any subsequent sentence. We stated, in Syllabus Point 1 of *Martin v. Leverette:*

The Double Jeopardy and Equal Protection Clauses of the West Virginia Constitution require that credit for time spent in jail, either pre-trial or post-trial, shall be credited on an indeterminate sentence where the underlying offense is bailable.

In sum, the circuit judge gives a criminal defendant credit for prior time spent in jail and thereby establishes the first eligibility date for the Parole Board to consider granting the defendant release on parole.

■ The State argues that parole is not a right, and that eligibility for parole does not guarantee the defendant's release from prison. We agree with this argument. As we stated in *State v. Lindsey,* 160 W.Va. 284, 291, 233 S.E.2d 734, 738–39 (1977), "One convicted of a crime and sentenced to the penitentiary is never *entitled* to parole." *See also, Wanstreet v. Bordenkircher,* 166 W.Va. 523, 536, 276 S.E.2d 205, 213 ("[T]here is no automatic right to parole once the prisoner crosses the threshold of eligibility."). "The decision to grant or deny parole is a discretionary evaluation by the [parole] board based on a prisoner's record and its expertise." *Tasker v. Mohn,* 165 W.Va. 55, 67, 267 S.E.2d 183, 190 (1980). The State therefore seems to take the position that the circuit judge's order, by requiring the appellant to spend an additional 200 days in custody before being eligible to appear before the Parole Board, affected no substantial right of the appellant. We disagree.

The appellant in the instant case is not arguing he has a right to parole; instead, he argues that he has a right under the Youthful Offender Act to timely appear before the Parole Board and state his case. Our cases have concluded that the Parole Board has a constitutional obligation to grant each prisoner eligible for parole "a timely and meaningful hearing, based on objective standards, followed by a decision sufficiently explained to allow a prisoner of ordinary intelligence to understand the basis of the Board's deci-

sion[.]" *State ex rel. Stollings v. Haines*, 212 W.Va. 45, 51, 569 S.E.2d 121, 127 (2002) (*per curiam*) (Albright, J., concurring in part and dissenting in part). For instance, in *Tasker v. Mohn*, 165 W.Va. 55, 267 S.E.2d 183 (1980), we held in Syllabus Point 2 that "Release on parole is a substantial liberty interest and the procedures by which it is granted or denied must satisfy due process standards." We went on to establish, in Syllabus Point 4, minimum standards that the parole release process must contain to meet constitutional due process protections, stating simply that the "[b]asic ingredients of due process are notice and an opportunity to be heard." *Tasker v. Mohn*, 165 W.Va. at 62, 267 S.E.2d at 188.

■ In several cases applying the statute under consideration in this case, *W.Va.Code*, 25-4-6, we have concluded that while there may be "[v]alid policy arguments favoring flexibility in this area," the Legislature mandates that a young defendant who has his or her post-Anthony Center probation revoked is to receive a sentence that is neither more nor less harsh than the pre-Anthony Center sentence. *State v. Richards*, 206 W.Va. 573, 574, 526 S.E.2d 539, 540 (1999). For example, we have held that *W.Va.Code*, 25-4-6 prevents a circuit judge from increasing a young defendant's sentence, holding in Syllabus Point 4 of *State v. Richards* that:

Where a criminal defendant has been placed on probation after successfully completing a program of rehabilitation under the Youthful Offenders Act, W.Va.Code §§ 25-4-1 to -12, and such probation is subsequently revoked, the circuit court has no discretion under W.Va.Code § 25-4-6 to impose anything other than the sentence that the defendant would have originally received had he or she not been committed to a youthful offender center and subsequently placed on probation.

Likewise, we made clear in the Syllabus to *State v. Patterson*, 170 W.Va. 721, 296 S.E.2d 684 (1982) that under *W.Va.Code*, 25-4-6, a circuit judge could not reduce a young defendant's sentence:

**10.** *See supra*, note 9, for a discussion that the Youthful Offender Act now applies equally to

W.Va.Code, 25-4-6, does not allow a trial court discretion to impose any less than the original sentence when a male [10] defendant, who has served at a youth correctional facility, violates his probation agreement.

(Footnote added.)

Pulling these various points of law together, when *W.Va.Code*, 25-4-6 is read strictly against the State and most favorably to the appellant, we believe that the Legislature intended for circuit judges to sentence young adult offenders to the same length of sentence, and reach eligibility to appear before the Parole Board in the same length of time, whether or not they participated in a young adult offender program.

■ We therefore hold that where a criminal defendant has been placed on probation after successfully completing a program of rehabilitation at a young adult offender center under the Youthful Offenders Act, *W.Va. Code*, 25-4-1 to -12, and such probation is subsequently revoked, pursuant to *W.Va. Code*, 25-4-6 the circuit court's sentencing order must credit the defendant with time spent in incarceration in such a manner that the defendant's date of eligibility for parole is the same as if the defendant had not been committed to a young adult offender center and subsequently placed on probation.

■ The circuit judge's order in the instant case credited the appellant for his time spent in incarceration, all 567 days, but did so in a manner that altered his date of eligibility for parole. The circuit judge's order increased by 200 days the amount of time the appellant was required to spend in custody before being eligible to see the Parole Board compared to the amount of time the appellant would have spent in custody had he not been committed to a youthful offender center and subsequently placed on probation. The circuit judge's order therefore violates the spirit of *W.Va.Code*, 25-4-6.

young men and women.

## III.

### Conclusion

The circuit judge's sentencing order is reversed, and this case is remanded for the circuit judge to correct the sentencing order to comply with this opinion.[11]

Reversed and Remanded.

Justice DAVIS dissents and reserves the right to file a dissenting opinion.

Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

DAVIS, J., dissenting.

Mr. Scott argues that all of his presentence credit for time served should have been apportioned between the two consecutive sentences imposed by the circuit court.[1] He further asserts that the time served credit should be deducted from the minimum terms of incarceration. The majority has agreed with Mr. Scott and, by way of footnote 11 of the opinion, has suggested that the circuit court "allocate 365 days toward the first uttering count, and the remaining 202 days toward the transporting count." For the reasons outlined below, I dissent from the majority's disposition of this issue.

The disposition of this case was controlled by the prior decision of this Court in *Echard v. Holland,* 177 W.Va. 138, 351 S.E.2d 51 (1986). In *Echard,* the defendant was sentenced in Ritchie County to a term of five to eighteen years. He was also sentenced in Wood County to a term of five to twenty-three years. The Wood County sentence was ordered to run consecutively with the Ritchie County sentence. The defendant eventually filed a habeas corpus petition in circuit court challenging how good time credit[2] was awarded him while in prison. The defendant alleged that his minimum discharge date had been incorrectly calculated because good time credit was improperly being distributed between his consecutive sentences. The circuit court disagreed and dismissed the petition. The defendant appealed.

While the particular issue in *Echard* involved how good time credit was awarded, to resolve the issue of defendant's minimum discharge date, the *Echard* Court had to first determine the amount of credit earned by the defendant for time served prior to imposition of his two sentences.[3] After determining the amount of credit for time served by the defendant prior to imposition of his two sentences, as well as the total amount of possible good time, the Court established the following formula for determining how credit was to be distributed when consecutive sentences are imposed:

> The maximum terms of the consecutive sentences, determinate or indeterminate, must first be added together to determine the inmate's maximum discharge date. *It is from this maximum discharge date that*

---

**11.** The simplest way to correct the order might be to allocate 365 days toward the first, uttering count, and the remaining 202 days toward the transporting count. We recognize, however, that by the time the circuit judge acts, this point may be moot. At oral argument, the parties suggested that the appellant had already appeared before the Parole Board and been denied parole, and that another parole hearing was scheduled for May 2003.

**1.** To clarify some relevant facts not fully articulated in the majority opinion, I note that Mr. Scott was never indicted on the uttering charge. Rather, Mr. Scott was arrested following the return of a four-count indictment that involved transporting a controlled substance onto the jail grounds. Two days after his arrest, Mr. Scott was released on a personal recognizance bond. At a subsequent hearing before the circuit court wherein a plea agreement was reached between Mr. Scott and the State, an information was filed

charging Mr. Scott with the crime of uttering. Pursuant to the plea agreement, Mr. Scott waived his right to be indicted on the uttering charge. In addition, Mr. Scott agreed to plead guilty to the uttering charge and to one count of the indictment (the crime of transporting a controlled substance onto the grounds of a jail). The remaining counts of the indictment were dismissed.

**2.** Good time credit is received after sentence and confinement.

**3.** It was determined that the defendant had accumulated 1,487 days credit while awaiting the final disposition of the Wood County prosecution. The Court found that the defendant had not accumulated any presentence credit for the Ritchie County case because that prosecution took place while he was being held on the Wood County charge.

*all presentence* and good time *deductions must be made* in order to establish the inmate's minimum discharge date.[4]

*Echard*, 177 W.Va. at 143, 351 S.E.2d at 56–57 (emphasis added).[5]

Under the decision in *Echard*, in cases involving consecutive sentences, credit for time served prior to sentencing is to be applied to and deducted from the aggregate of the maximum terms of the sentences. The ruling in *Echard* is consistent with the general rule throughout the country. *See Endell v. Johnson*, 738 P.2d 769, 771 (Alaska Ct.App.1987) ("[C]ourts of other jurisdictions ... have uniformly held that, when consecutive sentences are imposed for two or more offenses, periods of presentence incarceration may be credited only against the aggregate of all terms imposed."); *State v. Tauiliili*, 96 Hawai'i 195, 29 P.3d 914, 918 (2001) ("[W]hen consecutive sentences are imposed, credit for presentence imprisonment is properly granted against only the aggregate of the consecutive sentence terms."); *Stephens v. State*, 735 N.E.2d 278, 284 (Ind.Ct.App.2000) ("It is well-settled that where a person incarcerated awaiting trial on more than one charge is sentenced to concurrent terms for the separate crimes, [the law] entitles him to receive credit time applied against each separate term. However, where he receives consecutive terms he is only allowed credit time against the total or aggregate of the terms."); *State v. Anderson*, 520 N.W.2d 184, 187 (Minn.Ct.App.1994) ("When applying credit to consecutive sentences, however, credit is applied only to the first sentence, since to do otherwise would constitute 'double credit'

and defeat the purpose of consecutive sentencing."); Syl. pt. 2, *State v. Sanchez*, 2 Neb.App. 1008, 520 N.W.2d 33 (1994) ("Credit for presentence incarceration is properly granted only against the aggregate of all terms imposed.").[6]

Unfortunately, the majority opinion has attempted to overrule *Echard* without acknowledging that fact. The majority opinion, at first blush, appears to apply only to defendants who are initially placed at a youthful offender center. A closer look reveals that the opinion is not limited to that situation. This is true because, under Syllabus point 6 of the majority opinion, a defendant placed at such a center must be awarded time served "as if the defendant had not been committed to a young adult offender center." In other words, such a defendant must be granted time served in the same manner as any other defendant with presentence time served. However, the syllabus point fails to explain exactly how credit for time served should be awarded. This is where the Court's prior decision in *Echard* should have been applied. Instead, however, the majority opinion chose to elaborate on the application of its syllabus point in footnote 11.[7] This was improper for two reasons. First, footnote 11 does not follow the rule announced in *Echard*, and is, therefore, simply wrong. Second, by providing instruction to the bar that is contrary to the existing law in this state, the majority has attempted to create new law in a footnote. A footnote is not the proper place to announce new law. " '[N]ew points of law ... will be articulated through syllabus points as required by our state constitution.'

---

4. The Court applied this formula to determine the defendant's minimum discharge date.

5. This formulation was based upon the statute governing good time credit. *See* W.Va.Code § 28-5-27(e) ("An inmate under two or more consecutive sentences shall be allowed good time as if the several sentences, when the maximum terms thereof are added together, were all one sentence."). Since no statute actually addressed how to distribute credit for time served prior to sentencing, the Court in *Echard* applied the formulation used in the good time credit statute.

6. *See generally, United States ex rel. Derengowski v. United States Attorney General*, 457 F.2d 812 (8th Cir.1972); *State v. McClure*, 189 Ariz. 55,

938 P.2d 104 (1997); *State v. Hoch*, 102 Idaho 351, 630 P.2d 143 (1981); *Cox v. State*, 214 Kan. 652, 522 P.2d 173 (1974); *Commonwealth v. Carter*, 10 Mass.App.Ct. 618, 411 N.E.2d 184 (1980); *State v. Decker*, 127 N.H. 468, 503 A.2d 796 (1985); *State v. Aaron*, 103 N.M. 138, 703 P.2d 915 (1985); *People ex rel. Bridges v. Malcolm*, 44 N.Y.2d 875, 407 N.Y.S.2d 628, 379 N.E.2d 156 (1978); *Wilson v. State*, 82 Wis.2d 657, 264 N.W.2d 234 (Wis.1978).

7. Footnote 11 directs that a circuit court imposing consecutive sentences on any defendant must apportion credit for time served among the sentences imposed. In addition, under footnote 11, such apportionment must be made to the minimum term of each sentence that is imposed.

Syllabus Point 2, in part, *Walker v. Doe*, 210 W.Va. 490, 558 S.E.2d 290 (2001)." Syl. pt. 13, *State ex rel. Medical Assurance of West Virginia v. Recht*, 213 W.Va. 457, 583 S.E.2d 80 (2003). Furthermore, we have explained "language in a footnote generally should be considered obiter dicta which, by definition, is language 'unnecessary to the decision in the case and therefore not precedential." *Id.*, 213 W.Va. at 471, 583 S.E.2d at 94 (quoting *Black's Law Dictionary* 1100 (7th ed.1999)).

The least of the problems caused by the majority opinion will be appeals challenging the manner in which circuit courts apportion presentence time served. The greater problem will arise from defendants being released far too early from prison because of the imposition of credit for time served on the minimum terms of consecutive sentences. Because the majority opinion improperly attempts to create new law in a footnote, and because the legal principles explained in that footnote are contrary to the established law of this state and inconsistent with the rule followed by courts throughout the country, I respectfully dissent. I am authorized to state that Justice Maynard joins me in this dissenting opinion.