Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/19/2020 09:09 AM CDT

State of Nebraska, appellee, v.
Eddy D. Stabler, appellant.
___ N.W.2d ___

Filed March 27, 2020.    No. S-19-360.

1. **Jury Instructions.** Whether the jury instructions given by a trial court are correct is a question of law.

2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.

3. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

4. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

5. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

6. **Lesser-Included Offenses: Jury Instructions: Evidence.** A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the

defendant of the greater offense and convicting the defendant of the lesser offense.

7. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

8. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

9. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, Shawn Elliott, and Ella Newell, Senior Certified Law Student, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Heavican, C.J.

## INTRODUCTION

Defendant Eddy D. Stabler was convicted by a jury of second degree assault and use of a deadly weapon to commit a felony. He was sentenced to a total of 15 to 25 years' imprisonment. He appeals. We affirm.

## FACTUAL BACKGROUND

Stabler and the victim, Jacinda Stabler, were married and resided together on B Street in Lincoln, Nebraska, with their

four children and the children of each of them from previous relationships with other individuals. In April 2016, Jacinda filed for divorce. Stabler moved out of the family home to live with his sister, who resided elsewhere in Lincoln.

At approximately this same time, Stabler began communicating via electronic messaging with a relative, Athea Stabler. Stabler and Athea were both members of the Omaha Tribe, and Athea lived in Macy, Nebraska.

As part of a cooperation agreement, Athea testified at trial as to her role in Jacinda's assault. According to Athea's testimony, in Stabler's messages, which she later deleted, Stabler told Athea that Jacinda had been "cheating on" him and asked Athea whether she would "handle the situation." Though by all indications Athea did not know Jacinda, she agreed to help Stabler because she viewed Jacinda as a threat to the family.

On May 28, 2016, Athea came to Lincoln to attend an event at a community center. While at this event, Athea communicated with Stabler, again via electronic messaging, who wondered if "she" was at the event. Athea took "she" to mean Jacinda. Athea told Stabler that "she" was not in attendance. Stabler then asked whether Athea was staying overnight. Athea indicated that she was driving back to Macy with her mother and stepfather. At this, Stabler invited Athea to a family birthday party at a local bar and offered to drive her back to Macy the next day "if u can handle this." Athea testified that she understood "this" to refer to assaulting Jacinda. Athea agreed, and Stabler and Athea established general terms for payment— "Yeah give u sum cash r sun chit either way half an half we can talk about it"—which Athea explained meant she was to earn some combination of money and drugs. Unlike the earlier messages, these messages were not deleted and are part of the record.

At the conclusion of the event at the community center, Athea met with Stabler and others at the home of Stabler's sister to attend the birthday party. Athea testified that she

spoke alone with Stabler prior to leaving for the party and that Stabler indicated, in conformity with his and Athea's electronic messaging communications, that Athea was to assault Jacinda that night. According to Athea's testimony, Stabler told Athea to "leave a scar on [Jacinda's] face and to cut off her mane." In return, Athea was to be paid $400 and 4 grams of methamphetamine.

After attending the birthday party, Stabler and Athea dropped another partygoer off at the home of Stabler's sister, then went to a different location to "get high." During the car ride to the other location, Stabler gave Athea a knife.

At some point, Stabler and Athea went to yet another home. Athea testified that the individuals who lived in that home drove her to Jacinda's house and waited in the car while Athea was inside. Athea located Jacinda in the home, where she was sleeping in a bed with some of her children. That Jacinda was with her children gave Athea pause, and she testified that she decided only to threaten Jacinda. As such, she put the knife to Jacinda's throat; this woke Jacinda, who began screaming. Athea grabbed Jacinda by her hair and began to hit her. Jacinda fought back and kicked at Athea, so Athea began stabbing Jacinda and tried to cut off her hair. Having stabbed Jacinda, though not cut her hair, Athea fled the house, dropping the knife on her way out.

Over the next few months, Stabler and Athea continued to communicate via electronic messaging. As with the messages sent on the day of the assault, these later messages are in the record. According to Stabler, the messages, reprinted in relevant part below, can be explained because Athea was seeking drugs. However, Athea testified that she initiated contact and attempted to meet with Stabler because she felt she was "gypped" by the compensation she received from Stabler for assaulting Jacinda. Athea further testified that she had received "some meth" and "just a hundred dollars," when she was promised $400 and more methamphetamine than she ultimately received. Athea did not think she would be successful simply

telling that to Stabler, so she wanted to force a face-to-face meeting with him.

During the course of these messages, Athea told Stabler that "iWent in With aKnife And Left WithOut It. My FingerPrints On That Shit. So Its Only aMatter Of Time." She also messaged, "Ya Hear AnyThing About That Knife? That Shit Got Me Worried Like aMuhFcka. Ugh." On another occasion, Stabler warned Athea, "Dude the cops . . . relax k" and "I got u . . . u have my word." In response, Athea asked, "Any Updates With The Investigation?" Stabler informed Athea that "jacinda is pointing fingers at me . . . lol . . . I got this shit I tel u more in person u just relax as best u can." Athea responded, "Im Tryin' Unk. Juzt Impatient. Cuz if AnyThing Comes Bck On Me iAint Trynna Be Broke or Sober." On yet another occasion, Athea asked for news updates. Stabler said that there were no updates, but that that was good news, and that the police were "Looking for a 6′ft tall 230lbs Mexican male," to which Athea responded, "Ha! With Dark Curly Hair." Stabler then replied, "Lol . . . shhh hit me up when ur in town."

Meanwhile, shortly after the assault, law enforcement received an anonymous tip that Athea had assaulted Jacinda. Athea was eventually questioned while being held on other charges. Athea admitted to assaulting Jacinda, but said that she would not have done so absent the arrangement with Stabler. Athea was convicted of second degree assault and sentenced to 18 to 20 years' imprisonment.

Stabler was found guilty on both counts. He appeals.

## ASSIGNMENTS OF ERROR

Stabler assigns as error that the district court erred by (1) failing to give a limiting instruction when requested in response to the State's improper burden-shifting argument during rebuttal, (2) prohibiting Stabler from explaining that his prior convictions were for forgery, (3) failing to instruct the jury on the lesser-included offense of third degree assault, (4) finding that the evidence was sufficient to sustain Stabler's convictions, and (5) imposing excessive sentences.

## STANDARD OF REVIEW

[1,2] Whether the jury instructions given by a trial court are correct is a question of law.[1] When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.[2]

[3] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.[3]

[4] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[4]

## ANALYSIS

*Limiting Instruction.*

Stabler first assigns that statements made by the State in rebuttal closing arguments effectively shifted the burden of proof from the State to the defense and that the district court erred in not giving a limiting instruction to correct this burden shifting.

[5] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the

---

[1] *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017).

[2] *Id.*

[3] *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020).

[4] *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020).

evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[5]

As relevant to this assignment of error, the record shows that during the State's case in chief, it offered the testimony of one of the investigating officers. That officer testified that the police were able to locate just one of the two individuals who drove Athea to Jacinda's home and that the individual refused to speak with them.

During closing arguments, defense counsel noted that the State was not able to produce any witnesses to corroborate Athea's testimony, including either of those two individuals. Defense counsel then noted that though the State claimed that neither individual would cooperate, it was "not an excuse" and did not change the State's burden of proof.

In response to this, the State commented in its rebuttal argument that it "[did not] deny [that] it's [the State's] burden to prove this case beyond a reasonable doubt, but parties have the power to subpoena, both parties have the power to compel witnesses," apparently suggesting that Stabler, too, could have called these witnesses. Defense counsel objected at this point and requested the jury to be instructed that the burden never shifts to the defendant. The district court sustained the objection and noted, "The comments of the State are stricken from the record, and the jury is not to consider those comments."

On appeal, Stabler argues that the district court erred in not giving a limiting instruction regarding burden shifting. While the district court did not immediately give the specific limiting instruction Stabler requested, it struck the comments in question and specifically instructed the jury that it should disregard the comments. And only a short time later, just prior to submission of the case, the trial court again so instructed the jury, both orally and in writing. The instructions informed the jury that it should not consider as evidence statements or arguments made by the attorneys, objections to questions, or testimony the jury

---

[5] *State v. Case, supra* note 3.

had previously been told to disregard. In addition, the jury was instructed that the State had the burden to prove Stabler's guilt. The jury was also informed about the State's burden throughout the trial.

We find no error in the district court's handling of this matter. And even if there was error, it was not prejudicial. Stabler's first assignment of error is without merit.

*Admissibility of Stabler's Testimony*
*Regarding Nature of His Prior*
*Felony Convictions.*

In his second assignment of error, Stabler assigns that the district court erred in finding that he could not testify on direct examination as to the basis of his prior felony convictions.

During the course of trial, and just prior to Stabler's taking the stand to testify in his own behalf, the State moved in limine to prohibit Stabler from testifying as to the nature of his two prior felony convictions. That motion was granted, and Stabler made an offer of proof that had he been permitted to testify, he would have stated his prior convictions were for crimes of dishonesty, specifically forgery.

As relevant to this issue, Neb. Rev. Stat. § 27-609(1) (Reissue 2016) states:

> For the purposes of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (b) involved dishonesty or false statement regardless of punishment.

The issue presented in this case was addressed by the Nebraska Court of Appeals in *State v. Howell*.[6] The Court of Appeals examined this court's case law regarding § 27-609, and it concluded:

---

[6] *State v. Howell*, 26 Neb. App. 842, 924 N.W.2d 349 (2019).

> [W]e are constrained to find that the district court did not
> err in prohibiting [the defendant] from testifying as to
> the specifics of his prior felony conviction. Pursuant to
> [§ 27-609], [the defendant] was permitted to testify that
> he had previously been convicted of a felony or a crime
> involving dishonesty. He was not permitted to divulge the
> specifics of his prior conviction, as such information was
> not relevant to his credibility.[7]

Stabler argues in his brief that the district court erred, because without evidence on the nature of the felonies, "the jury was left to wonder about the nature of the prior felony convictions, in particular, left to wonder whether his felony convictions were for crimes of violence."[8] Stabler asks this court to reverse the Court of Appeals' decision in *Howell*.

We need not decide whether *Howell* was wrongly decided, because in this case, the evidence Stabler wished to admit was presented to the jury. The record shows that Stabler was permitted to testify, without objection or cross-examination, that his felonies were for crimes of dishonesty; thus, the jury was informed that Stabler's felonies were not for crimes of violence.

We decline to address Stabler's contention, made for the first time in oral arguments in this case, that there is a distinction between forgery and other crimes of dishonesty. This contention was not raised below, nor was it assigned or argued in his brief.

There is no merit to Stabler's second assignment of error.

*Lesser-Included Instruction.*

Stabler also assigns that the district court erred in refusing to give his requested instruction for the lesser-included offense of third degree assault. He contends Athea testified that after she entered Jacinda's home and found Jacinda sleeping with her children, she put the knife away and abandoned the

---

[7] *Id*. at 869, 924 N.W.2d at 371.

[8] Brief for appellant at 37.

original plan. Stabler further notes that Athea attacked Jacinda only to keep her from screaming. Stabler argues that even then, Athea attacked at first only by punching Jacinda, and that Athea did not use the knife until Jacinda kicked her. Stabler argues that this created a causal break, that Athea's actions using the knife after this point cannot be attributed to Stabler, and that there was a "rational basis" to support a third degree assault instruction.[9]

[6] A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.[10] The State does not dispute, and our case law supports, that third degree assault is a lesser-included offense of second degree assault. A person commits the offense of second degree assault by committing the offense of third degree assault of causing, intentionally, knowingly, or recklessly, bodily injury to another by the use of a dangerous instrument.

In *State v. Al-Zubaidy*,[11] the defendant was charged with second degree assault. An issue on appeal was whether a lesser-included instruction on the offense of third degree assault was warranted. We held such an instruction was not warranted, because the uncontroverted evidence established that a knife was used in perpetration of the assault. We noted:

> Where the prosecution has offered uncontroverted evidence on an element necessary for a conviction of the greater crime but not necessary for the lesser offense, a duty rests on the defendant to offer at least some evidence

---

[9] *Id.* at 41.

[10] *State v. Oliveira-Coutinho*, 304 Neb. 147, 933 N.W.2d 825 (2019).

[11] *State v. Al-Zubaidy*, 263 Neb. 595, 641 N.W.2d 362 (2002).

to dispute this issue if he or she wishes to have the benefit of a lesser-offense instruction.[12]

Here, the evidence was uncontroverted that Athea entered Jacinda's house with a knife that she intended to use, and in fact did use, to assault Jacinda. It was Stabler's duty to raise at least some evidence to dispute this issue. Stabler argues that Athea's decision not to assault Jacinda after seeing Jacinda with her children was a causal break that disputed the evidence of second degree assault and entitled him to an instruction for the lesser-included offense of third degree assault.

But this was not a causal break. Any momentary hesitation on Athea's part does not change the fact that Athea took a knife to Jacinda's home and attacked Jacinda with the knife and that the jury found Stabler guilty of that crime under an aiding and abetting theory. Moreover, in finding Stabler guilty of both second degree assault and of use of a weapon to commit a felony, the jury agreed that there was a connection between Stabler's arranging for the assault and Athea's use of the weapon.

There is no merit to Stabler's third assignment of error.

*Sufficiency of Evidence.*

Stabler next assigns that the district court erred in finding there was sufficient evidence to support his convictions. He argues first that Athea was not credible and that no other evidence supported Stabler's guilt. Stabler also argues that because Athea had second thoughts about using the knife to assault Jacinda when she saw the children in the room with Jacinda, such constituted an abandonment of the original plan and was a casual break in the chain of events. For that reason, the subsequent attack was attributed solely to Athea and there was no aiding and abetting liability on Stabler's part.

Stabler's contention that Athea was not credible is not relevant to our determination of whether there was sufficient

---

[12] *Id.* at 607, 641 N.W.2d at 373-74.

evidence to support the conviction. It is not the role of an appellate court to pass on the credibility of the witnesses, or otherwise resolve conflicts in or reweigh the evidence.[13] Rather, if in viewing the evidence in a light most favorable to the State there was any evidence to support Stabler's guilt, such is sufficient to support the convictions.[14] In this case, Athea testified that she used a knife, given to her by Stabler, to stab Jacinda; that she did so at Stabler's request; and that she was paid to do so. This is enough to support Stabler's convictions.

Stabler's contention that there was insufficient evidence to support his convictions because Athea abandoned the original plan and thereafter was solely responsible for Jacinda's assault is also without merit. As noted above, this was not a causal break relieving Stabler of responsibility under an aiding and abetting theory. This conclusion is reinforced, again as noted above, by the fact that the jury found Stabler guilty of second degree assault and use of a weapon to commit a felony.

There is no merit to Stabler's fourth assignment of error.

*Excessive Sentences.*

Finally, Stabler assigns that the sentences imposed by the district court were excessive. Stabler was convicted of second degree assault, a Class IIA felony, and sentenced to 10 to 15 years' imprisonment. He was also convicted of use of a weapon to commit a felony, a Class II felony, and sentenced to 5 to 10 years' imprisonment. The sentences were to be served consecutively.

[7] Under Neb. Rev. Stat. § 28-105 (Reissue 2016), a Class IIA felony is punishable by a maximum of 20 years' imprisonment. There is no minimum. A Class II felony is punishable by a maximum of 50 years' imprisonment and a minimum of 1 year's imprisonment. Where, as here, a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court

---

[13] See *State v. Case, supra* note 3.

[14] See *id.*

abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[15]

[8,9] In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.[16] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[17]

A review of the record shows that not only were Stabler's sentences within statutory limits, they were imposed based on Stabler's plotting to have his wife, the mother of his children, assaulted. The sentences were not based on any inappropriate or irrelevant information. The district court did not abuse its discretion in sentencing Stabler, and there is no merit to his final assignment of error.

## CONCLUSION

The convictions and sentences of the district court are affirmed.

Affirmed.

Freudenberg, J., not participating.

---

[15] *State v. Iddings, supra* note 4.

[16] *Id.*

[17] *Id.*