STATE OF NEBRASKA, APPELLEE, V. KEITH EDWARD SMITH, APPELLANT.

494 N.W.2d 126

Filed January 15, 1993.   No. S-88-465.

Leonard P. Vyhnalek for appellant.

Keith Edward Smith, pro se.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

After a jury trial, defendant, Keith Edward Smith, was convicted of attempted robbery, in violation of Neb. Rev. Stat. §§ 28-201 and 28-324(1) (Reissue 1989), and use of a knife in the commission of a felony, in violation of Neb. Rev. Stat. § 28-1205 (Reissue 1989). Defendant was sentenced on April 26, 1988, to 3½ to 10 years in prison for the attempted robbery and 1½ to 3 years for the use of a knife, with the sentences to run consecutively.

Defendant's trial counsel filed a notice of appeal on May 20, 1988, as well as appropriate praecipes for the preparation of the bill of exceptions and the transcript. On September 2, defendant's trial counsel filed a motion to withdraw on the grounds that defendant had commenced in the U.S. District Court for the District of Nebraska an action against trial counsel and other persons and that, therefore, a conflict of interest had been established between defendant and his counsel. On September 14, this court authorized trial counsel to withdraw, but denied defendant's motion to appoint counsel, filed in this court, "without prejudice to filing such application in the district court." Defendant filed two more motions for the appointment of counsel in this court, and similar orders were issued. Apparently, for reasons not known to this court, no motions for the appointment of counsel were filed at this time in the state district court. On January 20, 1989, this court granted the State's motion for summary affirmance of defendant's conviction.

Later, pursuant to a request from the office of the Attorney General of Nebraska, responding to an order issued in a case filed by defendant in the U.S. District Court, this court reinstated defendant's appeal on November 15, 1991, and ordered the trial court to appoint appellate counsel. Counsel, different from trial counsel, was appointed by the trial court, and the case was briefed, argued, and submitted to this court as a reinstated appeal.

In this court, defendant, through his counsel, assigns three errors, contending that the trial court erred in (1) determining that the evidence, if believed, was sufficient to sustain defendant's conviction; (2) imposing an excessive sentence; and

(3) allowing "trial counsel to withdraw without appointing counsel for appeal . . . ."

Defendant has also filed a "Pro Se Reply Brief." In this reply brief, defendant sets out two assignments of error: (1) that "[a]ppellant was not rendered effective assistance of Counsel at critical stages of his prosecution" and (2) that his sentence was excessive. We will not address the first pro se assignment, since it was raised in a reply brief, and in any event, in the best interests of defendant, the contentions in that assignment should be presented after a factual hearing on the merits of defendant's contention. The flood of factual allegations submitted to this court might then be considered by a factfinding court. The second pro se assignment will be considered with the same issue raised by counsel.

The third assignment of error raised by defendant's counsel is now moot, because as stated above, counsel has been appointed and the case has been submitted as an appeal.

With regard to defendant's first assignment of error raised by counsel as to the sufficiency of the evidence, the record before us shows the facts herein set out. JoAn and Henry Hauser manage the Stanford Motel in North Platte, Nebraska. On February 1, 1988, they were sitting in their apartment, which is connected to the lobby of the motel. Their 4-year-old grandson was seated in the lobby watching television. At approximately 10 p.m., their grandson summoned JoAn Hauser to attend a customer. When JoAn Hauser entered the lobby, she saw a man standing outside and looking in. When she opened the door for him, the man said he thought the door was locked and then requested a room.

JoAn Hauser walked back behind the counter, laid a customer card on the counter for him to fill out, and turned left toward the key rack. Feeling a bit uneasy by this time, JoAn Hauser turned to her husband, who was "just back" of the doorway, and gave him a "funny look." Henry Hauser walked to the back area of the motel and secured a gun. Meanwhile, JoAn Hauser placed a key on the counter. The man told her to step back from the counter and give him all the cash she had. When JoAn Hauser hesitated, the man threatened to kill her grandson, who was sitting by the lobby door, if she did not

comply.

At this point, the man raised his shirt and pulled a knife that was about 12 inches long and had a curved blade on it from underneath the shirt. Henry Hauser described the knife as looking like a "Green River Hunting Knife," which is similar to an old butcher knife that has been reworked. Upon seeing the man wave the knife in front of JoAn Hauser's face, Henry Hauser stepped in between JoAn Hauser and the man, pointed the gun at the man's face, and told him to drop the knife. The man did so. When Henry Hauser directed JoAn Hauser to call the police, the man stated that he would not wait for the police, and he picked up the knife from the floor and fled. Henry Hauser testified that he did not shoot the man because of the presence of JoAn Hauser and his grandchild.

Other evidence was adduced by the State as to certain footprints in the snow and certain tennis shoes defendant was wearing. This evidence was not conclusive as to any issue, but on the whole, evidence was brought forward which aided defendant, since the footprints in the snow seemed to be made by shoes smaller than the size of defendant's feet.

Further evidence adduced by the State established that the motel registration card, handled by the intruder on the night of the attempted robbery, did not show sufficient fingerprints for identification. A handwriting expert also testified that she had examined the registration card, but determined, on the basis that there was only a part of one word for examination, that there was no basis to conclude defendant had written the word, but also that there was no way to eliminate defendant as the possible writer.

Defendant testified that he did not commit the crimes with which he was charged. Defendant's wife testified that defendant was home with her the entire evening of February 1, 1988. On cross-examination by the State, however, defendant's wife admitted that she initially told the police that her husband was gone from the home on February 1 from 9 to 11 p.m. She explained that she had made a mistake in her original statements to the police.

In determining the sufficiency of the evidence to support a finding of guilt in a criminal case, an appellate court does not

resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Byam*, 239 Neb. 186, 474 N.W.2d 688 (1991); *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991); *State v. Andersen*, 238 Neb. 32, 468 N.W.2d 617 (1991); *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990).

An appellate court will not set aside a guilty verdict in a criminal case where such a verdict is supported by relevant evidence, and only where evidence lacks sufficient probative force as a matter of law may the appellate court set aside a guilty verdict as unsupported by the evidence beyond a reasonable doubt. *State v. Martin*, 239 Neb. 339, 476 N.W.2d 536 (1991).

There is no question that the Hausers were victims of an attempted robbery on February 1, 1988. The question is whether there was sufficient evidence, if believed, to prove beyond a reasonable doubt that the defendant committed the crime in question. The intruder was identified by two eyewitnesses, JoAn and Henry Hauser. JoAn Hauser described the assailant as wearing a blue flannel shirt with navy blue and white squares and a black line through it to make it plaid. Henry Hauser identified the assailant as wearing a two-tone blue plaid shirt with little white stripes in it. The minute differences in their descriptions are not sufficient to render their identification testimony unbelievable, as a matter of law, and overturn the convictions in this case.

The trial court did not err as contended in the first assignment of error set out by defendant's appellate counsel.

With regard to the assignment of error, made by both defendant's counsel and defendant pro se, as to the excessiveness of the sentence, we first note our established law. Absent evidence showing an abuse of discretion, an appellate court will not disturb a sentence imposed within statutory limits. *State v. Glover*, 236 Neb. 402, 461 N.W.2d 410 (1990); *State v. Garza*, 236 Neb. 215, 459 N.W.2d 747 (1990). The maximum term of imprisonment for each offense is 20 years, and the minimum term is 1 year, with a possible fine of $25,000.

Because of the seriousness of the crime, the sentencing judge felt probation was inappropriate.

Although the defendant previously had not been convicted of a felony, other factors are taken into consideration in determining whether to imprison a convicted offender. See Neb. Rev. Stat. § 29-2260 (Cum. Supp. 1986). "In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime." *State v. Haynie*, 239 Neb 478, 490-91, 476 N.W.2d 905, 914 (1991) (citing *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990)).

The 310-page presentence report demonstrates that defendant had a long history of psychological problems and also shows that there were valid concerns as to defendant's conduct and the safety of the public, particularly in view of defendant's convictions. A jury convicted defendant of a potentially violent crime. A 4-year-old child was threatened. We cannot say, as a matter of law, that the trial court abused its discretion in sentencing defendant.

The trial court did not err in any of the matters raised and considered herein. The judgment of the trial court is affirmed.

AFFIRMED.