IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. WELLER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

WESTLEY L. WELLER, APPELLANT.


Filed August 18, 2020.    No. A-20-040.


Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed as modified.

John D. Icenogle, of Bruner, Frank & Schumacher, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.


PIRTLE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Westley L. Weller pled no contest to second degree assault on a peace officer, operation of a motor vehicle to avoid arrest while engaged in willful reckless operation of the motor vehicle, and possession of a controlled substance (methamphetamine) with intent to distribute. The Hall County District Court sentenced Weller to 7 to 10 years' imprisonment on his assault conviction and 18 to 24 months' imprisonment each on his two other convictions. Weller claims the district court abused its discretion by excessively sentencing Weller and failing to make all the sentences run concurrently. Because we find plain error in other aspects of Weller's sentencing, we affirm as modified.

## II. BACKGROUND

In November 2018, the State filed a complaint in the county court for Hall County, charging Weller with nine counts of various alleged criminal violations. On February 4, Weller's counsel filed a motion for a mental health evaluation of Weller; the motion was denied. A preliminary hearing took place on May 7. The county court bound five counts over to the district court, and the other four counts were dismissed without prejudice on the State's motion.

On May 23, 2019, the State filed an information in the district court charging Weller with: count I, second degree assault on a peace officer; count II, use of a deadly weapon to commit a felony; count III, operation of a motor vehicle to avoid arrest while engaging in willful reckless operation of the motor vehicle; count IV, obstructing a peace officer; count V, willful reckless driving; count VI, driving during suspension (first offense); count VII, possession of methamphetamine with intent to distribute; count VIII, possession of a controlled substance (Xanax); and count IX, possession of marijuana (less than 1 ounce).

On May 28, 2019, the district court filed a journal entry in which it ordered a competency evaluation of Weller. On July 25, a forensic psychiatrist testified about the evaluation he had completed regarding Weller's competency and his opinion that Weller had the capacity to stand trial. The district court found Weller competent to stand trial. Thereafter, Weller pled not guilty to all nine counts of the information.

At a hearing on October 31, 2019, Weller's counsel agreed that the parties had reached a plea agreement. Weller's counsel said that in exchange for Weller's entry of no contest or guilty pleas to counts I, III, and VII, the State had agreed to dismiss the remaining charges and to recommend concurrent sentences at the time of sentencing. Also, Weller had agreed to pay restitution in an amount to be determined at the time of sentencing. Weller proceeded to enter pleas of no contest to counts I, III, and VII.

According to the factual basis provided by the State:

[A]round midnight on October 31, 2018, Officer [Aaron] Marquez of the Grand Island Police Department initiated a traffic stop of a vehicle due to an inoperable headlight. The vehicle was at the intersection of 13th and Cleburn in Grand Island, Hall County, Nebraska. The officer identified the driver of the vehicle to be [Weller].

During the course of the contact, the officer discovered there were active arrest warrants for [Weller]. The officer went back to make contact with [Weller] and to arrest him. The officer advised or told [Weller] to get out of the vehicle. [Weller] did not comply.

Officer Marquez then opened the door and attempted to remove [Weller] from the vehicle. [Weller] resisted, started the vehicle, and put it in gear and sped away from the location while a portion of Officer Marquez's body was still inside the vehicle due to the officer's grip on [Weller's] arm as he was trying to remove him from the vehicle.

As the vehicle rapidly pulled away, the vehicle struck the officer's hand and arm, causing pain to the officer who did eventually seek medical treatment at the hospital for his injuries.

The officer reported that [Weller's] vehicle accelerated and sped away from the area, did not stop for vehicles at 13th and Eddy, and was hitting speeds in excess of 50

miles per hour in that residential area. The officer also observed that [Weller] turned off all the lights in his vehicle, it was dark, and the vehicle sped away into the darkness.

A short time later, additional officers observed the same vehicle in the parking lot [for certain] apartments. The officers had activated their emergency lights to begin to attempt to stop [Weller's] vehicle. They followed him through the parking lot, and officers attempted to block [Weller's] route as he continued to drive.

An officer reported that he had to move his vehicle out of the way as [Weller] rapidly accelerated by the police vehicle, barely missing the police officer as he moved out of the way. They reported that [Weller] drove across the grass and the curb to get away.

He turned on Locust Street eventually and was reaching speeds of approximately 100 miles per hour. There were other vehicles on the roadway at the time, so the officers then terminated the pursuit for safety reasons.

Another witness reported seeing [Weller's] vehicle pull into her driveway, back up, and crash into two mailboxes, and then [Weller] rapidly sped away from the area.

Later that same day, [Weller] was located at a house in Grand Island. He was in a basement bedroom. They arrested him. They also seized a backpack that was near when they arrested him. It was identified to be [Weller's] backpack. Found were several containers inside.

One of the containers had a small [plastic] bag that was consistent with drug sale packaging, two containers of methamphetamine. Those items were all seized. The suspected methamphetamine was forwarded to the Nebraska State Patrol Laboratory for additional testing which resulted in a positive test for methamphetamine.

Several of the other bags contained methamphetamine residue, and the additional bags in the backpack contained controlled substances.

[Weller] was interviewed. He acknowledged he was the driver involved in the pursuit with law enforcement. He acknowledged backing into the mailbox during the pursuit.

All of the above events occurred in Hall County[.]

The defense did not dispute or add to that factual basis. The district court accepted Weller's pleas and found him guilty of counts I, III, and VII. The State then moved to dismiss counts II, IV, V, VI, VIII, and IX; the district court granted that motion.

The sentencing hearing took place on December 17, 2019. Near the end of the hearing, the district court orally pronounced Weller's sentences as follows: On count I, Weller was sentenced to 7 to 10 years' imprisonment "with credit given for 413 days." On count III, Weller was sentenced to 18 to 24 months' imprisonment "with credit given for 413 days." On count VII, Weller was sentenced to 18 to 24 months' imprisonment "with credit given for 413 days." The sentences as to counts I and VII were to be served concurrently with each other. The sentence for count III was to be served consecutively to the sentences for counts I and VII. Additionally, Weller was ordered to pay restitution in the amount of $1,096.65 to Officer Marquez and in the amount

of $750 each to two other individuals, all within 5 years of the date of Weller's release from incarceration. The sentencing order filed that same day reflected the same sentences.

Weller appeals.

### III. ASSIGNMENTS OF ERROR

Weller claims the district court (1) abused its discretion by excessively sentencing him and (2) by failing to make all of his sentences concurrent.

### IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Stabler*, 305 Neb. 415, 940 N.W.2d 572 (2020).

### V. ANALYSIS

#### 1. EXCESSIVE SENTENCE

Weller claims that his sentences are excessive and that count III should have been ordered to run concurrent to his other sentences. These claims are related to one another and are argued jointly in Weller's appellate brief. Thus, we address them jointly.

Weller was convicted of second degree assault on a peace officer under count I in violation of Neb. Rev. Stat. § 28-930(1) (Reissue 2016), which is a Class II felony pursuant to § 28-930(2). He was convicted of operation of a motor vehicle to avoid arrest, including engaging in willful reckless operation of the motor vehicle, under count III in violation of Neb. Rev. Stat. § 28-905(1) and (3)(a)(iii) (Reissue 2016), which is a Class IV felony under § 28-905(3)(a). Under count VII, Weller was convicted of possession of methamphetamine with intent to distribute in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 2018), which is a Class II felony pursuant to § 28-416(2)(a). See, Neb. Rev. Stat. § 28-405(c)(3) [Schedule II] (Cum. Supp. 2018); Neb. Rev. Stat. § 28-401(28)(h) (Cum. Supp. 2018).

As relevant to counts I and VII, a Class II felony is punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2018). As pertinent to count III, a Class IV felony is punishable by up to 2 years' imprisonment and 12 months' postrelease supervision, a $10,000 fine, or both. *Id.* If imprisonment is imposed, a minimum of 9 months' postrelease supervision must be ordered. *Id.* However, any person who is sentenced to imprisonment for a Class II felony and sentenced concurrently or consecutively to imprisonment for a Class IV felony is not subject to postrelease supervision under § 28-105(1). See § 28-105(6). See, also, Neb. Rev. Stat. § 29-2204.02(4)(b) (Reissue 2016). Further, the sentence for a conviction under § 28-905(1) and (3)(a) must order the revocation or impoundment of the operator's license of the defendant for a period of 2 years and order the defendant not to drive any motor vehicle for any purpose in Nebraska for a like period. See § 28-905(3)(b). The district court sentenced Weller on count I to 7 to 10 years' imprisonment and on counts III and VII to 18 to 24 months' imprisonment each. Without factoring in the credit awarded for time already served, the terms of imprisonment imposed on all three counts were within the applicable sentencing ranges. We will not disturb Weller's sentences absent an abuse of discretion by the district court. See *State v. Stabler, supra*.

- 4 -

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Stabler, supra*.

The presentence investigation report (PSR) shows that Weller was 20 years old at the time of sentencing and 19 years old when he committed his offenses that are the subject of this appeal. Weller's criminal history as an adult includes the following. Stemming from an incident on April 18, 2018, Weller was charged with possession of a controlled substance (zolpidem) with intent to distribute (later amended down to an attempt charge of the same), possession of a controlled substance (hydrocodone), and possession of drug paraphernalia. In July, he failed to appear on a speeding charge from June; in September, he failed to appear on charges of careless driving and leaving the scene of an accident from an incident in August. The PSR indicates that requests to suspend Weller's operator's license were submitted to the Department of Motor Vehicles in response to each of the traffic incidents from June and August. On October 3, a bench warrant was issued for Weller's arrest related to the charges stemming from the April 18 incident. On October 31, Weller was arrested for his offenses underlying his present convictions. On June 27, 2019, prior to his sentencing in the present case, Weller was convicted upon his no contest plea in a separate case and was sentenced to 36 months' probation on two of the charges stemming from the April 18, 2018, incident.

Attached to the present PSR was the PSR compiled ahead of Weller's sentencing on June 27, 2019, in his separate criminal case. Weller was interviewed as part of the prior presentence investigation on June 18. The prior report included a Level of Service/Case Management Inventory (LS/CMI), which was used to assess Weller's risk to recidivate. On the LS/CMI, Weller scored low risk in the domains of criminal history and family/marital, medium risk in the domains of companions and antisocial pattern, and high risk in the domains of education/employment, leisure/recreation, alcohol/drug problem, and procriminal attitude/orientation. Weller's overall score on the LS/CMI placed him as a high risk for reoffending. On his feelings about his illegal drug use, Weller had said, "'I don't like it. I would like not to be doing them anymore.'" A "Simple Screening Instrument" showed Weller at a moderate-to-high risk for abusing drugs or alcohol. Weller reported that in 2017, he was diagnosed as having bipolar disorder, depression, general anxiety, and social anxiety. Other information regarding his mental health history was included in the prior report.

The PSR included Weller's letter dated December 3, 2019, to the district court regarding his present convictions. He wrote that he understood and fully accepted the consequences for his actions for which he was solely responsible. He was in a "bad spot" in his life. He had lost his

grandmother with whom he shared a "very close" relationship and he had lost a couple friends in a "very short time." Weller believed he did not handle the "situation" as he should have and instead used drugs to cope. He offered his sincere apologies to everyone "involved" on October 31, 2018, especially Officer Marquez. Weller said he was "using" then and was "high"; his thoughts and judgment were "clouded [a]nd wrong." He thought he had made a "terrible mistake" due to his "bad" thought process and actions that he took.

During the sentencing hearing, Weller's counsel did not have any additions or corrections to add to the PSR. Weller's counsel argued that the last 1½ years had been "pretty rough" for Weller as far as contact with law enforcement and what was going on in his life. However, there had been a "marked improvement" in his attitude towards things. Weller's counsel pointed out that Weller lost his grandmother "not too long ago," causing Weller to have some "emotional problems" that "came to fruition" with "some of the [convictions] here." Weller's counsel indicated that Weller had worked on his emotional problems. Weller's counsel suggested that probation could help Weller as to his "high-risk" (LS/CMI score) in the field of alcohol and narcotics. Weller's counsel pointed out that Weller was currently on probation. Weller's counsel believed that Weller was "young" and deserved a chance to be rehabilitated. No one was "seriously hurt," though the officer suffered "some injuries" for which Weller had agreed to pay restitution. The defense asked the district court to enter an order for a minimum jail sentence with 413 days' credit for time served along with a term of probation. Weller personally had "[n]o comment." Among other things, the State recommended that Weller be placed on probation or postrelease supervision.

The district court said that it had considered Weller's age, mentality, education and life experiences, social and cultural background, past criminal record including "one prior felony conviction in adult court at least [sic]," and motivation for his offenses which was his "desire to avoid responsibility for [his] actions." The court also considered the nature of Weller's offenses and the amount of violence "directly caused and threatened" by his actions. The court had reviewed Weller's statements in his letter and had noted the arguments made by each party's counsel during the sentencing hearing.

The district court said it also had to consider the impact on the community and on Weller of the sentence it would pronounce. On that point, the court stated:

> You are a young man with I am sure a lot of potential; however, in this situation, your actions were terrifying. You could easily be here today on a murder charge. You could easily have been here to face manslaughter charges if you hurt someone as you chose to put your car in gear and take off, not only the officer you almost ran over, but the individuals whose property was damaged. It could have easily been someone walking across the street getting hit by your car. I have to take that into consideration.

> I find that a sentence of less than the one I am going to pronounce, [Weller], would depreciate the seriousness of your criminal conduct as well as promote disrespect for the law. I find that you are in need of correctional services best provided by a facility under the direction of the department of corrections.

The court sentenced Weller as set forth previously.

On appeal, Weller does not challenge the restitution he was ordered to pay. His argument appears to be targeted at the length of the term of imprisonment imposed on each count. He acknowledges that the district court indicated that it had considered all of the usual sentencing factors. Weller notes that the district court went "further in depth" on three factors: his young age, criminal record, and motivation for the offense. Brief for appellant at 5. Weller's suggestion that the district court did not fully consider the timeline or effect of his felony convictions for the separate incidents in April and October 2018 are not supported by the record. The PSR showed that Weller was not convicted for his felonious acts done in April until June of 2019, which was after he committed the felonious acts underlying this case in October 2018. The PSR showed that Weller was in jail from October 31 to the time of his sentencing in this case. Weller argues that he was not able to participate in the probation services ordered in his separate criminal case because he was in jail while the instant case was pending. For sentencing here, the district court could have readily inferred from the PSR that Weller had not yet been rehabilitated or had a meaningful opportunity to learn anything from his June 2019 felony convictions. Still, it was not inappropriate for the district court to note Weller's prior felony convictions as relevant to determining sentencing in this case.

Weller apparently concedes that it is "difficult to contest" that his motivation for his present offenses was to avoid responsibility for his actions. *Id.* But he argues that does not factor in the fear or stress that "would have been occurring in a twenty-year-old's mind when he was already facing a pending felony case." *Id.* The district court did emphasize Weller's "young" age while at the same time reasonably characterizing what it found to be the motivation behind Weller's offenses. Also, the district court stated it had considered Weller's letter, which we note contained Weller's own perception of the cause of his criminal actions.

Weller further takes issue with the district court's statements that he could have been before the court for sentencing on a murder or manslaughter conviction. He believes that sentencing someone for something that "might have happened" is a "dangerous and slippery slope." *Id.* at 6. But he understands that it is "feasible" that he could have struck and killed a pedestrian. *Id.* Given the uncontested factual basis as provided by the State, the district court's remarks reflect sensible concerns about the danger and potential harm which Weller presented to the community during the commission of his offenses underlying his present convictions. Weller notes that the district court did not discuss the threat to the community should Weller have not been imprisoned, but the same can be inferred from the totality of the statements that the district court did make as well as the rest of the record. The district court also implied that Weller would benefit from correctional services best provided by the prison system.

Weller complains that count III was not run concurrent to his other sentences for the same reasons already addressed and rejected above. He also argues that while the district court suggested his youth was a "mitigating factor," the court "decided" that "did not warrant abiding by the recommendation of the [State] or [his] counsel." Brief for appellant at 5. Although unclear, Weller may be referring to the plea agreement which in part included that the State would recommend concurrent sentencing terms at the time of sentencing. Our record does not show that the State ever made that recommendation during the sentencing hearing. However, the State did not request any of the sentences to be served consecutively either. Generally, it is within a trial court's discretion

to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). This is so even when offenses carry a mandatory minimum sentence, unless the statute requires that consecutive sentences be imposed. *Id.* Weller does not cite to any authority that supports that his age at the time of committing his offenses required his sentence on count III to be served concurrently. And even had the State recommended count III to run concurrently to the other counts, the district court nevertheless would have maintained its discretion to direct that the sentence on that count run consecutive to counts I and VII.

We cannot conclude that the district court abused its discretion in the sentences imposed on Weller or by ordering Weller's sentence on count III to be served consecutively to his sentences on counts I and VII.

## 2. PLAIN ERROR REVIEW

In its responsive appellate brief, the State asserts that the district court committed plain error by (1) failing to order a 2-year revocation of Weller's operator's license and (2) awarding too many days of credit for time served. Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020). An appellate court may, at its option, notice plain error. *Id.* A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review. *State v. Kantaras*, 294 Neb. 960, 885 N.W.2d 558 (2016). We will consider each alleged plain error in turn.

### (a) Revocation or Impoundment of Operator's License

The State submits that the district court committed plain error by failing to order a 2-year revocation of Weller's operator's license as to the sentence on count III. We agree.

As stated previously, on count III, Weller was convicted of operation of a motor vehicle to avoid arrest, including engaging in willful reckless operation of the motor vehicle, in violation of § 28-905(1) and (3)(a)(iii). Section 28-905(3)(b) mandates that a sentence for such a conviction must include the revocation or impoundment of the operator's license of the defendant for a period of 2 years and order the defendant not to drive any motor vehicle for any purpose in Nebraska for a like period; the revocation or impoundment shall be administered upon sentencing, upon final judgment of any appeal or review, or upon the date that any probation is revoked.

During the plea hearing on October 31, 2019, the district court had informed Weller that part of the punishment for count III would be that his motor vehicle license would be suspended or revoked for a period of 2 years from his release from incarceration. However, the district court ultimately sentenced Weller on count III solely to a term of imprisonment. The court's failure to order a 2-year license revocation was contrary to the statute and constitutes plain error. Therefore, we modify the sentence on count III to correct the plain error and order a 2-year revocation of Weller's operator's license in accordance with § 28-905(3)(b). See *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015) (affirming sentences as modified to correct plain error).

(b) Presentence Credit for Time Served

The State further submits that the district court committed plain error by awarding Weller 413 days' credit against each of the three sentences, totaling 1,239 days' credit for time served. We agree that the district court committed plain error in its award of credit for time served.

During the sentencing hearing, Weller's counsel indicated to the district court that Weller was entitled to 413 days' credit for time served. The State did not voice disagreement. The PSR shows that Weller was in jail from the date of his arrest underlying his present convictions, October 31, 2018, through the date of the sentencing hearing, December 17, 2019. As stated on the PSR, that amounts to 413 days that Weller was in jail awaiting sentencing on counts I, III, and VII.

The district court's oral pronouncement of the sentences implied that 413 days' credit for time served was to be applied three times as to the three sentences. The sentencing order filed the same day indicated the same. As relevant, it stated that Weller's sentences on each count were as follows:

**Count I**, for a period of not less than 7 years nor more than 10 years; credit for 413 days.

**Count III**, for a period of not less than 18 months nor more than 24 months; credit for 413 days.

**Count VII**, for a period of not less than 18 months nor more than 24 months; credit for 413 days.

(Emphasis in original.)

Neb. Rev. Stat. § 83-1,106(1) (Reissue 2014) provides that "[c]redit against the maximum term and any minimum term shall be given to an offender for time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based." Although under § 83-1,106, an offender shall be given credit for time served as a result of the charges that led to the sentences, presentence credit is applied only once. *State v. Custer, supra*. Therefore, when consecutive sentences are imposed for two or more offenses, periods of presentence incarceration may be credited only against the aggregate of all terms imposed. *Id.* And with concurrent sentences, such periods are credited against the longest sentence, but are, in effect, applied against all the sentences. *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013). See, also, *State v. Sanchez*, 2 Neb. App. 1008, 520 N.W.2d 33 (1994). This must be done because the term of the longest sentence determines the total length of time the person is held. *Id.* However, the end result is the same as in the consecutive sentence situation where credit is applied against only the first sentence. *Id.* The total time to be served under the sentences is reduced by the time served before sentencing. *Id.*

Under the foregoing authority, the district court's apparent application of 413 days' presentence credit for time served each to counts I, III, and VII, constituted plain error. The 413 days' credit should have been awarded only once against the sentence for count I, which is the longest sentence here. Because counts I and VII were to be served concurrently to each other, the award of credit once on count I, in effect, would have also applied to count VII. Further, given that presentence credit could only be applied once, there would have been no remaining credit to award

against count III, which was to run consecutive to counts I and VII. We therefore modify the sentencing order to state that Weller is to receive credit in the amount of 413 days for time already served only against the sentence on count I. See *State v. Custer, supra* (affirming sentences as modified to correct plain error).

## VI. CONCLUSION

For the reasons stated above, we find plain error and modify Weller's sentences as previously stated in this opinion. Specifically, (1) Weller's sentence on count III shall include a 2-year revocation of Weller's operator's license and (2) the 413 days' credit for time already served shall be applied only against the sentence on count I. In all other respects, we affirm Weller's sentences.

AFFIRMED AS MODIFIED.